The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and oral arguments before the Full Commission. Neither party has shown good ground to reconsider the evidence, receive further evidence or to amend the Opinion and Award. However, the parties have submitted a Stipulation relating to the ten (10%) penalty awarded by Deputy Commissioner Chapman, in which the parties agree that the awarding of said penalty was in error. Therefore, those portions of the Opinion and Award relating to the ten (10%) penalty have been removed.
The parties were also instructed to submit a stipulation regarding compensation paid in the case, but no stipulation was submitted.
A Form 21 agreement has been approved in the case and is incorporated by reference. The parties at the hearing stipulated into evidence a bound packet of medical records and reports. They also submitted by stipulation an additional 10 pages of medical reports from Dr. Sweet after the hearing.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. In October 1991 plaintiff began working for defendant employer as a hostess. Although past retirement age, she apparently needed to supplement her retirement benefits. At some time later, she was given additional duties in the kitchen, including cooking and washing dishes.
2. On 13 July 1993 plaintiff sustained a compensable injury by accident when she slipped on a drop cloth and began to fall. She twisted around to grab the door frame in order to keep from falling to the floor. As a result of the incident, she twisted her right knee. Dr. Buter examined her on 22 July 1993 and ordered an MRI of the knee which showed some degenerative changes and a cyst. He then injected her knee with medication.
3. Plaintiff continued to complain of pain in her knee and later complained of pain from her knee to her heel. By 24 September 1993 she was also describing pain in her right buttock and thigh. Consequently, Dr. Buter decided to refer her to a back specialist. On 7 October 1993 she began seeing Dr. Wheeler. He was of the impression that she had spinal stenosis with right S1 radicular symptoms, and he prescribed anti-inflammatory medication. He continued to follow her until 1 December 1993. She then saw Dr. Mokris who ordered a bone scan and a myelogram/CT scan. The tests did not reveal a surgical defect. His impression was that she probably had L4 radiculopathy and radiculitis. In January he recommended an epidural steroid injection and referred her to Dr. Chapman.
4. Dr. Chapman began treating plaintiff on 21 January 1994. He reviewed her tests and felt that they showed only mild stenosis but no significant nerve root compression. She had not had the epidural steroid injections previously recommended, so he had them scheduled. Although she subsequently underwent the injections, she did not report improvement. On 10 April 1994 she presented to the emergency room with complaints of worse pain and the onset of urinary incontinence. Dr. Davis, a partner of Dr. Chapman's, saw her and ordered further tests which indicated that she had sustained a compression fracture of L4. She was hospitalized for treatment of that condition which was probably due to osteoporosis and which was not a result of her injury at work.
5. Plaintiff subsequently returned to Dr. Chapman. He prescribed a chair back brace which gave her some relief from her low back pain, but she continued to have right leg pain for which he could not determine the exact etiology. On 7 June 1994 he indicated that she had reached maximum medical improvement and gave her a permanency rating.
6. Plaintiff continued to experience back and right leg pain. She apparently went to her family doctor who referred her to Dr. Sweet, a neurosurgeon. He examined her on 10 October 1994 and felt that she was having radicular pain. After obtaining another myelogram/CT scan, he diagnosed her condition as severe spinal stenosis at L3-4 and moderate spinal stenosis at L4-5, and he recommended surgery to decompress her lumbar spine. The surgery was performed on 27 December 1994. After the operation plaintiff reported significant improvement of her right leg pain. However, she continued to experience some pain and stiffness in her low back. Dr. Sweet followed her recovery until the date of hearing and had not released her from his care as of that time.
7. As a result of the injury by accident on 15 July 1993, plaintiff not only injured her right knee, she also materially aggravated a pre-existing back condition so that she required medical treatment and was rendered disabled. She remained unable to return to work as a result of the injury until she had the spontaneous compression fracture of the L4 vertebra. Even though that condition was not related to her injury at work, she would have remained unable to work as a result of her prior compensable back injury due to her persistent leg symptoms. The leg symptoms continued throughout the time in question. Although Dr. Chapman was unable to identify the exact etiology of the symptoms, Dr. Sweet later determined that they resulted from spinal stenosis and was able to give her relief with surgery to decompress the lumbar spine.
8. The spinal stenosis for which Dr. Sweet performed surgery in December 1994 was a proximate result of the injury by accident giving rise to this claim in that the injury materially aggravated her pre-existing condition.
9. Plaintiff has remained unable to perform her job duties for defendant-employer as a result of her 13 July 1993 injury. Although defendants originally admitted liability for benefits under the Workers' Compensation Act and paid compensation to her for temporary total disability pursuant to a Form 21 agreement which was approved by the Industrial Commission, they subsequently stopped paying compensation without filing a Form 24 request to stop payment with the Commission. However, the parties did not submit a stipulation regarding benefits paid, so no finding can be made regarding the date compensation was terminated.
10. As of 23 August 1995, the date of hearing before Deputy Commissioner Chapman, plaintiff had not reached maximum medical improvement. Since that time, the Commission has not received any evidence to the contrary or otherwise related to the issue of permanent partial disability. Consequently, no finding is made regarding the extent of permanent partial disability she may sustain as a result of this injury.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff is entitled to continuing compensation for temporary total disability at the rate of $92.73 per week from the date when compensation was terminated until the date of hearing on 23 August 1995 and continuing thereafter for as long as she remains so disabled. G.S. § 97-29.
2. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident. However, she is not entitled to have defendants provide the treatment for her L4 compression fracture which did not arise from her injury. G.S. § 97-2(19); G.S. § 97-25.
* * * * * * * * * * * * * * *
Based on the foregoing finding of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff for temporary total disability at the rate of $92.73 per week from the date when compensation was terminated until the date of hearing on 23 August 1995 and continuing thereafter for as long as she remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee which is hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury, but they are not liable for her treatment for the L4 compression fracture.
3. An attorney's fee in the amount of 25% of the compensation awarded is approved for plaintiffs counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
4. Defendants shall pay the costs.
 S/ _____________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _________________________ COY M. VANCE COMMISSIONER